UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-079 |
| v.  : | |
| : | |
| DANIEL AVERY and JAIMEE AVERY, : | |
| : | |
| **Defendants** : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence each Defendant to 30 days' incarceration. The government also requests, consistent with the plea agreement, that the Defendants each be ordered to pay $500 in restitution.

I.   **Introduction**

Husband and wife Defendants Daniel Avery, a 45-year-old pharmacist, and Jaimee Avery, a 43-year-old pharmacist, participated in the January 6, 2021 attack on the Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

1

Both Defendants pleaded guilty to Counts 3 and 4 of the Information, respectively charging disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). With respect to Daniel Avery, the government's recommendation of 30 days' incarceration is supported by his decision to lie to law enforcement officers and his lack of remorse. The government's recommendation of 30 days' incarceration for Jaimee Avery is supported by her decision to photograph and videotape while inside the Capitol and her lack of remorse.

The Court must also consider that the Defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for the Averys' actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of the Averys' crimes support a sentence of 30 days' incarceration for each.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 1 (Criminal Complaint) and ECF No. 29 and 30 (Statements of Offense).

*Defendants Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, the Averys attended the former President's Ellipse rally in Washington, D.C. Afterward, they, along with throngs of others, walked from the Ellipse, eastbound on Constitution Ave., before finally reaching the Capitol. Daniel Avery, circled in blue

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

in a screenshot from an open-source video below, wore a dark-colored jacket, a dark-colored shirt with an American flag, a dark glove on his right hand, and a dark-colored backpack. Jaimee Avery, circled in red in the same image below, carried a "3%er's" flag[2] and wore a blue jacket and a red, white, and blue "USA" hat.

*Image 1: Screenshot of open-source video depicting the Averys walking eastbound on Constitution Ave. toward the Capitol*



At approximately 2:44 p.m., the Averys made their entry into the Capitol through the Upper West Terrace Door with Daniel entering first followed closely by Jaimee. As discussed

---

[2] According to the Anti-Defamation League, Three Percenters (also known as 3%ers, III%ers, and Threepers) are anti-government extremists who are part of the militia movement. Constituent members equate their hostility to the federal government with the opposition of American patriots to the British during the American Revolution. The term itself is a reference to their belief, which the Anti-Defamation League claims to be false, that the number of Americans who fought against the British during the Revolutionary War amounted to only three percent of the population at the time. https://www.adl.org/resources/backgrounder/three-percenters

below, the Averys would spend the next 18 minutes inside the building. Jaimee Avery, at the moment of her initial entry into the Capitol, was holding her phone consistent with photographing or videotaping the moment she broke the plane.

*Image 2: CCTV Screenshot of the Averys entering the Capitol through Upper West Terrace Door at 2:44:37pm*



After their entry reflected in Image 2 above, the Averys walked east down the hallway, which led straight to the Rotunda.

*Image 3: CCTV Screenshot of Averys Walking East Down Upper West Terrace Hallway toward Rotunda taken at 2:44:47*



4

At 2:45pm – just one minute after they first entered the Capitol – the Averys entered the Rotunda from the west, walked north, and then exited through the north door.  As depicted in Image 4 below, upon initially entering the Rotunda, the Averys, circled in yellow, joined with a crowd of other rioters, some of whom were wearing gas masks, helmets, and carrying flags.

*Image 4:  CCTV Screenshot of the Averys in the Rotunda at 2:45:30*



After exiting through the North Door at 2:45:48, the Averys are not visible on CCTV again until 2:54:14pm, at which time CCTV captures them re-entering the Rotunda from the same door at 2:54:2.  When they re-entered, the Averys stopped to talk with other rioters near the east door of the Rotunda.

5

*Images 5 and 6: CCTV Screenshots of Averys, Circled in Yellow, Re-Entering Rotunda at 2:54 and Stopping to Talk to Other Rioters Near East Door*





After approximately one minute of conversation with other rioters, the Averys exited the east door and stood near the entrance where Jaimee Avery, with her back to the Rotunda's entrance, stood and used her phone for approximately 41 seconds. Daniel AVERY stood on the other side of the door observing other rioters enter and exit the Rotunda.

*Image 7: CCTV Screenshot of the Averys, Circled in Yellow, outside the Rotunda at 2:55:52*



Approximately one minute later, the Averys walked north and reached the East Front Corridor. No other rioters are seen with them as they proceeded down the corridor.

*Figure 8: CCTV Screenshot of the Averys in the East Front Corridor at 2:56:53*



Over the course of the next three minutes, the Averys exited the hallway, walked east down the Ohio Clock Corridor, down a flight of stairs, and stopped near the North Door Appointment Desk.

*Figure 9: The Averys at the North Door Appointment Desk at 3:01:08*



Approximately 30 seconds later, the Averys stop and speak with several police officers, who moved the Averys away from the North Door.

*Image 10: CCTV Screenshot of the Averys Speaking with Law Enforcement Officers at 3:01:49*



The Averys exited the Capitol through the North Door at 3:02 p.m.

8

*Daniel Avery's Interview*

On September 5, 2023, FBI Special Agents interviewed Daniel Avery at his residence in Phoenix, AZ, where he provided agents with a mixture of truth and lies. Daniel Avery confirmed that he and co-defendant Jaimee Avery were present in Washington, D.C. for a few days around January 6, 2021. Daniel Avery also stated that they stayed at a hotel across from Freedom Plaza, which was either a Hyatt or Marriott. Further, he told agents that on January 6, 2021, he and Jaimee Avery watched President Trump speak at the Ellipse.

But, his truth telling ended there. When Agents asked Daniel Avery directly if he entered the Capitol Building on January 6, 2021, he claimed that he did not enter the Capitol Building and that he "wouldn't" enter the building. In fact, he told agents that after watching then-President Trump's speech, he and Jaimee Avery "walked around town" and ended the day eating Vietnamese food. When Agents confronted Daniel Avery with photographs of him and Jaimee Avery inside the Capitol, he abruptly ended the interview.

*The Charges and Plea Agreement*

On February 12, 2024, the United States charged the Averys by a four-count Information for violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). ECF No. 7. On May 20, 2024, pursuant to plea agreements, the Averys pleaded guilty to Counts 3 and 4 of the Information. By plea agreement, the Defendants agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

The Averys each now face sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the Defendants face up to six months for each of those offenses and a fine of up to $5,000 per count. The Defendants must also pay restitution under the terms of their respective plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days for each.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing the Averys' participation in that attack to fashion just sentences, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like the Averys, the absence of violent or destructive acts is not a mitigating factor. Had either Daniel or Jaimee Avery engaged in such conduct, they would have faced additional criminal charges.

For Daniel Avery, the most important factors in this case are his lies to FBI agents and lack of remorse. For Jaimee Avery, the most important factors are use of a phone while inside the Capitol and her lack of remorse.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days of incarceration for each.

### B. The Averys' History and Characteristics

<u>Jaimee Avery's Criminal History</u>

As set forth in the PSR, Jaimee Avery's criminal history consists of two prior arrests, neither of which resulted in a conviction. JA PSR at ¶¶ 35-36. The first occurred in 2003 in Surprise, Arizona, and involved a domestic incident between Jaimee and Daniel Avery during which they both were arrested in what the PSR describes as a mutual assault. *Id*. at ¶ 35. According to incident reports, Daniel Avery physically assaulted Jaimee Avery, and Jaimee Avery pointed a gun at him. *Id*. Both Daniel and Jaimee Avery were arrested but no complaint was subsequently filed. *Id*. Jaimee Avery's second arrest came in 2020 and involved possession of marijuana and drug paraphernalia. JA PSR at ¶ 36. According to those incident reports, the charge stemmed from a traffic stop of the vehicle Jaimee Avery was driving. *Id*. The officer who stopped her smelled marijuana and, when asked if she had any of the substance in her vehicle, Jaimee Avery pulled a container which held a partially smoked joint. *Id*. That case was subsequently dismissed, and Jaimee Avery maintains that the marijuana belonged to co-Defendant Daniel Avery. ECF No. 38.

<u>Daniel Avery Criminal History</u>

Daniel Avery's criminal history consists of his arrest in connection with the domestic violence incident described above during which he physically assaulted Jaimee Avery. DA PSR

11

at ¶ 35.  While this is the only prior law enforcement contact with law enforcement, the incident as described in the PSR is troubling in that it involved a violent offense involving spousal abuse, albeit one in which no charge or conviction resulted.

<ins>Daniel Avery's Personal Characteristics</ins>

In terms of personal characteristics, the PSRs detail stable upbrings and current well-paying jobs for both Averys, which has afforded them advantages that many defendants lack.  DA PSR at ¶¶ 38-43; JA PSR at ¶¶ 40-44.  Despite that good fortune, both defendants chose to participate in the riot. Their choice to do so was ideologically motivated – in fact, when arrested Daniel Avery volunteered to the FBI that that he and Jaimee Avery "just have a different idea of the Constitution" – thus any argument concerning stable childhoods and well-paying jobs shed no light on whether either should receive leniency or are a risk to reoffend.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to Daniel and Jaimee Avery also weighs in favor of a term of incarceration.

Most importantly, neither Daniel Avery nor Jaimee Avery have shown any remorse for their actions on January 6, 2021. When given the opportunity to make a statement for inclusion in the PSR, both declined. DA PSR at ¶ 28; JA PSR at ¶ 28. Worse yet, Daniel Avery, when interviewed by the FBI, chose to lie rather than accept responsibility and express remorse. Thus, the Court should view any remorse expressed at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people

worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Further, Daniel Avery lied when discussing marijuana use with the PSR writer. While admitting that he has been a long-time user – he said that he first began smoking marijuana at age 14 or 15 (DA PSR at ¶ 51) – he was not candid about when he last used. He told the PSR writer that his last use was New Years Eve 2023 (*id*.), but a urinalysis performed on February 9, 2024, returned a positive test. *Id*. at ¶ 53. This lie, coupled with the lies he previously told the FBI about his activities on January 6, demonstrates that Daniel Avery fails to recognize the seriousness of his conduct and generally lacks respect for the law.

With the 2024 presidential election approaching, a rematch on the horizon, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. This Court must sentence the Averys in a manner sufficient to deter them specifically, and others generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Daniel and Jaimee Avery based on their own conduct and relevant

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

characteristics, but should give substantial weight to the context of the unlawful conduct: their participation in the January 6 riot.

The Averys pleaded guilty to Counts 3 and 4 of the Information, respectively charging disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). Both offenses are Class B misdemeanors. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Corey Ray Brannon,* 21-cr-637 (TSC), Judge Chutkan sentenced the defendant to 30 days of incarceration following his guilty plea to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Like the Averys, Brannon marched with other rioters from then President Trump's speech at the Ellipse to the Capitol. Similar to Daniel Avery, Brannon was less than candid when interviewed by the FBI. Brannan claimed that he did not remember the names of the people with whom he traveled to D.C., told agents that he did not remember how he got into the Capitol, and claimed that the tactical vest that he was wearing belonged to someone else. The government recommended 30 days

15

incarceration to be followed by 36 months' probation, and Judge Chutkan imposed 30 days' incarceration and 24 months' probation.

In *United States v. Daniel Warmus,* 21-cr-417 (PLF), the defendant pled guilty to a misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building) and received 45 days' incarceration followed by 24 months' probation. Warmus spent 15 minutes inside the Capitol, which is similar to the 18 minutes the Averys spent in the building. Much like Jaimee Avery, Warmus is seen extensively photographing both inside and outside the Capitol. Unlike the Averys, however, Warmus videotaped assaults on police officers. The government requested a sentence of 30 days' incarceration and Judge Friedman sentenced him to 45 days' incarceration followed by 24 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**V.     Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Daniel and Jaimee Avery must each pay $500 in restitution, which reflects in part the role each played in the riot on January 6.[5] Jaime Avery Plea Agreement at ¶ 12; Daniel Avery Plea Agreement at ¶ 12. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

2023." *Id.* The Averys' restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 94.

### VI.    Fine

The defendants' convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject them to a statutory maximum fine of $5,000.00. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendants' income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d).

The burden is on the defendants to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, the defendants have not shown an inability to pay, thus the Court has authority to impose a fine.

### VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendants Daniel Avery and Jaimee Avery to 30 days' incarceration and order $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Daniel Avery's and Jaimee Avery's liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crimes.

        Respectfully submitted,

        MATTHEW M. GRAVES  
        UNITED STATES ATTORNEY  
        D.C Bar No. 481052

By: */s/ Jack Burkhead*  
        JACK BURKHEAD  
        Assistant U.S. Attorney  
        NM Bar No. 10493  
        601 D Street, N.W.  
        Washington, D.C. 20579  
        (202) 809-2166  
        jack.e.burkhead@usdoj.gov